COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| A.S. HORNER, INC., | § | No. 08-18-00044-CV |
| Appellant, | § | Appeal from the |
| v. | § | 384th District Court |
| RAFAEL NAVARRETTE, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2015DCV3144) |

# **O P I N I O N**

Appellant A.S. Horner, Inc. ("Horner") appeals the denial of its motion for summary judgment seeking dismissal of claims brought against it by Appellee Rafael Navarrette. Horner sought summary judgment on the ground that it is exempted from liability for Navarrette's injuries pursuant to section 97.002 of the Texas Civil Practice and Remedies Code. Because the controlling issue solely presents a question of law, we granted permission to Horner to file this interlocutory appeal. *See* TEX. R. APP. P. 28.3; TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d).

## BACKGROUND

Rafael Navarrette sued Horner, the State of Texas Department of Transportation ("TXDOT"), and the County of El Paso for injuries he sustained while working.[1] At the time of

---

[1] The trial court dismissed Navarrette's claims against the State and the Texas Department of Transportation

the incident, Navarrette—a firefighter-paramedic—was on duty and responding to a multi-vehicle crash that occurred in the middle of the night on Loop 375. Navarrette's suit alleged that, "[w]hile between the barricades, on a defectively designed and installed cement catwalk without restraining railings he fell 20 to 30 feet through a 3 1/2 or 4 feet opening." As a result of his injuries, Navarrette asserted claims pursuant to premises liability based on a dangerous condition on the road or property, and alternatively, based on theories of negligence.

It is undisputed that Horner constructed the overpass from which Navarrette fell, and that it had completed the construction some seven weeks prior to that incident. Ricardo Romero, the TXDOT area engineer charged with ensuring that Horner's work was performed in compliance with TXDOT's contract documents, testified the overpass and ramp were constructed as designed and planned.

In answer to Navarrette's claims, Horner asserted, among other defenses, that Navarrette's claims against it were barred by section 97.002 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002. As discussed in further detail below, section 97.002 provides that if, at the time of a personal injury, property damage, or death, a contractor, who constructs or repairs a highway, road, or street for TXDOT, is in compliance with contract documents—material to the condition or defect that was the proximate cause of the personal injury, property damage, or death—such contractor is not liable to a claimant for those injuries arising from the performance of the construction or repair. *See id*. § 97.002. After a period of discovery, and based on section 97.002, Horner moved for summary judgment of Navarrette's claims against

(collectively "TXDOT"), and the County. Navarrette later filed a bill of review seeking to reinstate his claims against TXDOT. The court denied TXDOT's motion to dismiss the bill of review. That denial is the subject of appeal number 08-18-00017-CV, styled *State of Texas and Texas Department of Transportation v. Rafael Navarrette*.

it. In support of its motion, Horner provided evidence that it was a contractor to which section 97.002 applies and proof that it performed its construction work in compliance with TXDOT's plans.

Navarrette did not dispute Horner's status as TXDOT's contractor or its assertion that its construction complied with TXDOT's contract documents. Rather, he argued that section 97.002 was inapplicable to this case because his injuries did not "arise from the performance of the construction or repair[,]" since Horner's work was not ongoing but rather completed prior to the incident. Said differently, Navarrette asserted the statute only protects contractors from claims for injuries sustained during the construction process, but not for claims of injuries sustained after construction is completed.

On January 14, 2018, the trial court signed an order denying Horner's motion for summary judgment. Horner then filed a motion for entry of an amended order to permit it to pursue an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d). The court signed an amended order denying Horner's motion for summary judgment, stating as the ground for that denial that section 97.002 does not apply because construction was completed prior to the injury. The trial court found the statutory requisites for an interlocutory appeal were present and, thus, granted Horner permission to file an interlocutory appeal. This Court followed suit and permitted this appeal. *See* TEX. R. APP. P. 28.3.

## DISCUSSION

The sole issue on appeal is whether section 97.002 applies only in the context of active construction or whether it also shields qualified contractors from liability for injuries sustained after construction is completed.

3

## *Standard of Review*

Summary judgments are reviewed *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Mann*, 289 S.W.3d at 848; TEX. R. CIV. P. 166a(c). "[A] defendant who conclusively negates at least one essential element of a cause of action or conclusively establishes all the elements of an affirmative defense is entitled to summary judgment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

Issues of statutory construction are also reviewed *de novo*. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018).

## *Applicable Law*

The Supreme Court of Texas has cautioned that courts must construe statutes "as written" and must "refrain from rewriting text that lawmakers chose." *Creative Oil & Gas*, 591 S.W.3d at 133 (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009)). "This means enforcing 'the plain meaning of the text unless a different meaning is supplied by statutory definition, is apparent from the context, or the plain meaning would lead to an absurd or nonsensical result.'" *Id.* (quoting *Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex. 2015)). And, while a reviewing court must consider the specific statutory language at issue, it must do so in the context of the statute as a whole, not as an isolated provision. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 183 (Tex. 2019); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d

4

432, 439 (Tex. 2011).

Courts are not to consider "legislative history or other extrinsic aides to interpret an unambiguous statute because the statute's plain language most reliably reveals the legislature's intent." *Tex. Health Presbyterian Hosp. v. D.A.*, 569 S.W.3d 126, 135-36 (Tex. 2018). Neither party contends that section 97.002 is ambiguous, and we agree that it is not. We therefore decline Horner's invitation to examine the statute's legislative history and focus instead on its plain language. *See id.*

Whether section 97.002 applies in the context of completed construction appears to be a question of first impression. Each of the cases we have found applying this statute concerns an injury sustained while road construction or repair was ongoing. *See*, *e.g.*, *Brown v. RK Hall Constr., Ltd.*, 500 S.W.3d 509, 510 (Tex. App.—Texarkana 2016, pet. denied) (collision with construction equipment in construction zone); *Bennett Truck Transp., LLC v. Williams Bros. Constr.*, 256 S.W.3d 730, 731 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (accident caused by traffic lanes narrowed by ongoing construction). None of these cases, however, address whether the statute's applicability is limited to such circumstances. We are guided, then, only by principles of statutory construction, as recited above.

### *Analysis*

Beginning with its plain terms, section 97.002 reads as follows:

> A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death.

5

TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

Notably, section 97.002 has three distinct parts: (1) an introduction describing who qualifies for the statute's protection, (2) a middle portion describing the specific protection the statute affords, and (3) an ending setting forth the condition that must be met for such protection to apply. We address each part in turn.

## A. To whom section 97.002 provides protection

The first portion of section 97.002 sets forth to whom the statute provides liability protection: "A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation . . . ." *Id*. § 97.002. Navarrette asserts the term "constructs" modifies the phrase "arising from the performance of the construction or repair," which appears in the middle, next portion of the text. But we disagree with that assertion. Rather, in context, the opening phrase, "A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation," is a restrictive clause modifying the immediately preceding noun, "contractor."

The first word in the restrictive clause—"who"—is a relative pronoun. Bryan Garner, The Redbook: A Manual on Legal Style § 10.9, at 178–79 (3d ed. 2013). Relative pronouns require an antecedent—that is, a preceding noun—to which they refer. *Id* Generally, the proper antecedent for a relative pronoun is the noun that (1) precedes the pronoun most closely; and (2) agrees in number, gender, and person with that pronoun. *Id*. at § 10.10, 179. Here, the word "contractor" is the noun immediately preceding the relative pronoun "who" and both words agree in number (singular), gender (neutral), and person (third). Thus, "who," along with the remainder of the clause, relates to "contractor" in this statute. A restrictive clause is one that "limits the essential meaning of the sentence element it modifies or identifies." William Strunk, Jr. & E.B. White, The

6

Elements of Style, (4th ed. 2000) (Glossary: restrictive term, element, clause); *see also* Bryan Garner, Garner's Modern American Usage (Glossary: Clause, Relative) (3d ed. 2009). The restrictive clause here limits the essential meaning of "contractor" because, in its absence, the statute would apply to any contractor regardless of the nature of the work such contractor engaged in or for whom the contractor performed—even a contractor hired to replace drywall, for example. But the restrictive clause here evidences the Legislature's intent for it to apply only to contractors hired by TXDOT to perform highway or road construction. TEX. CIV. PRAC. & REM. CODE ANN. § 97.002.

Navarrette also contends that his interpretation of section 97.002 is mandated by the tense of the verb "constructs." He argues that because "constructs" is stated in the present-active tense, the Legislature intended the phrase to limit the statute's application to construction that is presently ongoing. However, we determine the plain language and structure of the phrase does not support this argument.

When construing statutory language, we may consider the use and interpretation of similar language in other statutes. *See Jaster v. Comet II Constr., Inc*., 438 S.W.3d 556, 563 (Tex. 2014). The Texas Legislature commonly uses present-tense verbs in restrictive clauses to explain to whom the relevant statute applies; this is grammatically proper because restrictive clauses are not the action of the sentence, they are being used as modifiers to nouns within the statutes. For example, § 74A.002 of the Texas Civil Practice and Remedies Code provides,

> Unless the health care provider acts with malice or gross negligence, a health care provider *who provides patient information to a health information exchange* is not liable for any damages, penalties, or other relief related to the obtainment, use, or disclosure of that information in violation of federal or state privacy laws by a health information exchange, another health care provider, or any other person.

TEX. CIV. PRAC. & REM. CODE ANN. § 74A.002(a) (emphasis added). This exclusion from liability is not limited to the brief moment where patient information is being disclosed to a health information exchange. On the contrary, a health information exchange can only use or disclose information in violation of law *after* it has been provided that information. Thus, despite the use of the present tense verb "provides," the statute shields a health care provider from liability for claims arising from the use of patient information even after the act of providing the information to a health information exchange is complete.

Similarly, section 150.004 of the Texas Civil Practice and Remedies Code states that "[a] certified municipal inspector *who provides the services* to which this section applies is not liable for civil damages, including personal injury, wrongful death, property damage, or other loss related to the inspector's act, error, or omission in the performance of the services," with certain exceptions. TEX. CIV. PRAC. & REM. CODE ANN. § 150.004(b) (emphasis added). The Legislature did not intend to limit the application of this statute only to claims for damages incurred while inspectors are actually in the process of performing an inspection. Thus, as seen with these two statutory examples, the Legislature's use of the present tense "constructs" in section 97.002's restrictive clause is not a manifestation of intent for the statute's protection from liability to apply *only* in the context of ongoing construction.[2]

Finally, Navarrette urges that Horner's reading of section 97.002 would impermissibly require that we add language to the statute so that it reads, "[a] contractor who constructs or repairs

---

[2] Horner further points out that two statutes of repose employ present tense verbs such as "designs" or "constructs" while clearly applying to injuries sustained after completion of such design or construction. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.008 (claim against architect, etc., who "designs, plans, or inspects" improvement to real property); 16.009 (claim against person who "constructs or repairs" improvement to real property).

[or has completed construction or repair of] a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance [or completion] of the construction . . . ."[3] While we agree that such additional language would support the interpretation advanced by Horner, we do not agree that such language is fully necessary to that interpretation.

Simply put, the word "constructs" is not the action of the sentence, it is part of a restrictive clause that modifies the noun before it. As a result, the choice to use a present-tense verb in the restrictive clause has no temporal bearing and does not limit the application of section 97.002 to injuries only occurring during ongoing construction or repairs.

**B. The specific protection section 97.002 affords**

After establishing to whom the statute provides protection, the middle portion of the text explains the protection afforded to those who are qualifying contractors as follows: "[a contractor] is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 97.002. Without dispute, we first note that this case involves a personal injury, not property damage or death. Thus, for clarity and succinctness, we will simplify by omitting these two terms from further discussion.

Navarrette contends that "arising from the performance of the construction" necessarily means that the contractor's performance must be contemporaneous with the claimant's personal

---

[3] The argument can be made that Navarrette's interpretation of section 97.002 as only applying to active construction requires altering the language of the statute to read "a contractor who ~~constructs~~ [is constructing] a highway for the Texas Department of Transportation is not liable to a claimant for personal injury arising from [and during] the performance of the construction."

9

injury. We conclude, however, that this is neither a logical—nor grammatically-correct—reading of the phrase. The words "arising from" simply acknowledge that there must be a causal nexus between the contractor's conduct in performing a TXDOT project—whether ongoing or completed—and the injury claimed. *See Delaney v. Univ. of Houston*, 835 S.W.2d 56, 59 (Tex. 1992) (discussing "arising out of" and "arises from" as requiring a nexus). Without this clause, for example, a contractor in compliance with a TXDOT contract anywhere in the state might assert a section 97.002 defense against a claim for personal injury it caused under circumstances unrelated to its TXDOT project. Stated differently, a contractor's mere following of contract terms does not shield it from potential liability arising out of events completely unrelated to the work at issue.

Navarrette's interpretation would require us to determine that the word "performance" has a present temporal effect. But the ordinary, common meaning of the word "performance" has no inherent, temporal limitation and may, in certain contexts, refer to past, future, or present performance. *See Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W.3d 96, 104 n.5 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see* Merriam-Webster's Collegiate Dictionary 920 (11th ed. 2014) (defining "performance" as "the execution of an action" or "something accomplished"). Consequently, we conclude that "performance," as used in section 97.002, encompasses both ongoing and completed construction.

Based on its plain text, the statute applies only to those claims based on allegations that a premises condition or defect arising from the performance of the construction or repair has proximately caused personal injury, property damage or death. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002. Because "performance" can mean past performance, the nexus required by section 97.002 is met here as Navarrette claims his injury occurred because of an allegedly dangerous

condition or defect—that is, the condition or defect of "a 3 1/2 or 4 feet opening" appearing between the ramp and the overpass, the condition or defect of a lack of rails to prevent falls, the condition or defect of the failure to adequately warn that falls could occur, or any combination of such.

Giving the plain language of the statute its ordinary meaning, and considering the text as a whole, we conclude that the phrase "arising from the performance of the construction" does not limit section 97.002's application only to those cases in which an injury is sustained during ongoing highway construction or repairs.

## C.  The condition under which section 97.002 applies

The remainder of the text provides the crucial condition under which the statute applies, and in doing so, further reveals the Legislature's intent. The contractor is only shielded from liability "if, at the time of the personal injury, . . . the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury . . . ." *Id.* § 97.002.

In Texas, highway contractors such as Horner have no discretion to deviate from the design plans provided in their contract with TXDOT. *See Brown v. RK Hall Construction, Ltd.*, 500 S.W.3d 509, 511 (Tex. App.—Texarkana 2016, pet. denied) (quoting *APAC–Tex., Inc. v. Beasley*, No. 09-13-00390-CV, 2014 WL 887266, at *2 (Tex. App.—Beaumont Mar. 6, 2014, no pet.) (mem. op.). Highway contractors have no discretion to deviate even when the plans "may be inadequate or flawed to such a degree as to . . . cause harm or damage to some person or some property." *Beasley*, 2014 WL 887266, at *2. Highway contractors are simply hired to execute the design plans provided by TXDOT. *See id.* Given the relationship between TXDOT and its highway

11

contractors, it would make little sense for the Legislature to allow a claimant to sue a contractor—either during construction or after it was completed—for injuries arising from an alleged defect when the contractor performed its work pursuant to TXDOT's specifications.

It is clear from the language of section 97.002, when read in its entirety, that the Legislature enacted the statute to shield contractors who construct or repair highways for TXDOT from liability in situations where it is affirmatively shown that the contractors complied with TXDOT specifications over which they had no control. In other words, when it is shown that highway construction for TXDOT is completed in compliance with TXDOT's requirements, we find no textual basis to conclude that the Legislature only granted protection to contractors contemporaneously with the period of active construction.

The dissent argues that this interpretation would allow contractors to escape liability forever upon project completion. Yet, we do not construe section 97.002 to provide a complete limit of liability against contractors in all situations, or even those in which injuries occur after the contractor's completion of a roadway. As stated above, the statute contains an important limitation on a highway contractor's defense: it must have performed its construction or repair in compliance with contract documents. Of course, we further recognize it is possible that a contractor's non-compliance with TXDOT's specifications may only be discovered after the completion of its highway work and even after the project's acceptance by TXDOT. In that scenario, if a genuine issue of material fact is raised on the compliance issue, it would preclude the grant of summary judgment favorable to the contractor, even though the project at issue was by then complete.

Because TXDOT designed this project and required Horner to execute a specific design plan, unless Navarrette could show a genuine issue of fact pertaining to the construction contract

and material to the alleged condition or defect he claims had proximately caused his injury, section 97.002's condition of applicability is met. Here, Navarrette has not produced any evidence that Horner's work failed to comply with the TXDOT contract, and it has not refuted Horner's and TXDOT's assertions to that effect. In contrast, Horner has provided convincing evidence that it constructed the relevant portion of the project in accord with its TXDOT contract documents.

For these reasons, we disagree with Navarrette's proposed interpretation of the statute's text. Section 97.002 applies alike whether contractors have ongoing projects or have ultimately completed their work. Whether a contractor may be held liable for personal injury, property damage, or death arising from the performance of the contractor's construction or repair of a highway, road, or street for TXDOT, does not hinge on whether the work is ongoing or completed. Instead, the liability depends on whether, at the time of the personal injury, property damage, or death, the contractor is in compliance with its contract documents which are material to the condition or defect that was the proximate cause of the personal injury, property damage, or death. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 97.002. Since it is undisputed that (1) Horner qualified as a contractor who performed work on a roadway for TXDOT and (2) it was in compliance with TXDOT's contract documents material to the condition or defect that allegedly caused the personal injury at issue—at the time of such injury—we hold that Horner has conclusively established its no liability defense as a matter of law. *See id.* at § 97.002; *see also Brown*, 500 S.W.3d at 511, 513–15 (summary judgment in favor of contractor invoking section 97.002 was appropriate where there was no genuine issue of material fact regarding whether the contractor's work on a TxDOT roadway was in compliance with TxDOT's contract materials relevant to the claimant's injury). Accordingly, the trial court erred when it denied Horner's motion for summary judgment.

13

Horner's sole issue on appeal is sustained.

## CONCLUSION

Having sustained Horner's sole issue, we reverse the trial court's order denying Horner's motion for summary judgment and render judgment dismissing Navarrette's claims against Horner.

GINA M. PALAFOX, Justice

March 19, 2021

Before Rodriguez, C.J., Palafox, J., and McClure, C.J. (Senior Judge)
Rodriguez, C.J., dissenting
McClure, C.J. (Senior Judge), sitting by assignment