

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00099-CV

_____

HALEY BROWN, Appellant

V.

RK HALL CONSTRUCTION, LTD., AND STACY LYON D/B/A
LYON BARRICADE & CONSTRUCTION, Appellees

On Appeal from the 62nd District Court
Lamar County, Texas
Trial Court No. 84841

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Chief Justice Morriss

# OPINION

After drinking some alcohol at a friend's house one evening in March 2012, twenty-year-old Haley Brown attempted to drive home along U.S. Highway 82 in Lamar County just before midnight. Immediately after midnight, she drove into a construction zone, collided with a piece of construction machinery parked in a barricaded area away from the designated lane of traffic, and was badly injured as a result. Trooper James T. Farrelly arrived at the scene of the accident and reported that Brown disregarded a warning sign and drove into the barricaded area in which was located the equipment she hit. Brown claimed that, although she saw the barricades, they "were located in the middle of the highway" and failed to indicate which lane was closed.

Brown sued Texas Department of Transportation (TxDOT) contractors, RK Hall Construction, LTD., and Stacy Lyon d/b/a Lyon Barricade & Construction (collectively the Contractors), for negligence in, among other things, failing to create and implement a safe traffic control plan.[1] In their answers to Brown's lawsuit, the Contractors argued, among other things, that they complied with material portions of the TxDOT Traffic Control Plan (the Plan) for the U.S. Highway 82 project. The trial court agreed that the Contractors conclusively established their compliance with material portions of the TxDOT plan, and granted summary judgment in their favor. Brown appeals. Because we find that summary judgment was properly granted, we affirm the trial court's judgment.

---

[1]The Contractors designated TxDOT as a responsible third party, but TxDOT filed a plea to the jurisdiction, which the trial court denied. In a previous opinion, we reversed the trial court's judgment and rendered judgment dismissing Brown's claims against TxDOT for lack of subject-matter jurisdiction. *Tex. Dep't of Transp. v. Brown*, No. 06-15-00090-CV, 2016 WL 1103867, at *1 (Tex. App.—Texarkana Mar. 22, 2016, no pet.) (mem. op.).

2

The grant of a summary judgment is subject to de novo review by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In making the required review, we deem as true all evidence that is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010).[2]

"Contractors making road repairs for the State of Texas 'must conform to the work specifications set by the governmental unit overseeing the project.'" *APAC-Tex., Inc. v. Beasley*,

---

[2]The Contractors also filed a no-evidence motion for summary judgment. Because we find that the Contractors conclusively established their affirmative defense, we need not discuss whether the trial court correctly found that Brown failed to bring forth more than a scintilla of probative evidence on each element of her claims.

No. 09-13-00390-CV, 2014 WL 887266, at *2 (Tex. App.—Beaumont Mar. 6, 2014, no pet.) (mem. op.) (quoting HOUSE COMM. ON CIV. PRACTICES, BILL ANALYSIS, Tex. H.B. 1699, 78th Leg., R.S. (2003)). A TxDOT contractor who is in substantial compliance with TxDOT's contract documents is immune from liability for injury resulting from its work. *Id.* As a limit on contractor liability, the Legislature enacted Section 97.002 of the Texas Civil Practice and Remedies Code, which provides:

> A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death.

TEX. CIV. PRAC. & REM. CODE ANN. § 97.002 (West 2011).

It is undisputed that the Contractors were in the midst of roadwork for TxDOT when the accident occurred.[3] The Contractors moved for summary judgment, arguing that they were protected from liability because they had complied with all the Plan's requirements that were material to the condition that proximately caused Brown's injuries. They bore the burden of proving this affirmative defense. *Peachtree Const., Ltd. v. Head*, No. 07-08-0020-CV, 2009 WL 606720, at *3 (Tex. App.—Amarillo Mar. 10, 2009, no pet.) (mem. op.). Accordingly, we review

---

[3]In her petition, Brown alleged that the Contractors "had a duty to exercise ordinary care in the design, creation, construction, operation and maintenance of the construction zone in question." She listed these duties as

> includ[ing] the duty to provide for the safe passage of traffic, to provide safe ingress and egress of traffic, to protect the construction zone from motorists and pedestrians, to timely install signs, to provide for the safe and convenient access to abutting property, highways, public roads and/or street crossings, and to properly implement reasonable and appropriate traffic control devices.

Brown alleged that these failures were the proximate cause of her injuries.

4

the evidence to evaluate whether the Contractors conclusively established that they complied with the material portions of the Plan and TxDOT contract documents.

Richard Harper was the TxDOT engineer who was responsible for developing TxDOT traffic control plans. Harper testified that TxDOT contractors are not authorized to make any changes to traffic control plans without TxDOT's prior approval.[4] Harper reviewed the Plan, which was included as summary judgment evidence, and concluded, after reviewing photographs of the construction site, that the Contractors' placement of the barricades had conformed to the Plan. Harper further testified that the construction machine Brown crashed into—a shuttle buggy—was placed thirty feet away from the lane of travel, as required by the Plan.

Michael Cody Reeves, who had worked with TxDOT for over sixteen years, was the TxDOT inspector in charge of examining the construction site. Reeves testified that he examined the setup of all of the traffic control devices twice a day and that the Contractors' placement of those devices had always complied with the Plan.[5] Reeves specified that he personally examined the construction site before leaving the site later in the day, March 16, 2012, and that everything was in its proper place before the March 17, 2012, accident that occurred at 12:01 a.m. Reeves also testified that the placement of the shuttle buggy complied with the Plan.

Jason Exum, an RK Hall employee, testified that the Contractors were never informed that any traffic control device was out of place, even though TxDOT inspected the construction site on

---

[4]Stacy Lyon and Billy Sessums, both of Lyon Barricade & Construction, confirmed that they could not alter the Plan without the approval of a TxDOT engineer.

[5]Sessums confirmed that Reeves was on the jobsite every day.

a daily basis. Exum reviewed photographs and video recordings of the construction site and stated that the placement of all traffic control devices was consistent with the Plan. Exum also agreed that the shuttle buggy was parked in the proper place, as specified by the Plan.

In summation, Harper, Reeves, Exum, Lyon, and Sessums all testified that the Contractors had not deviated from the Plan in any way when placing traffic control devices.[6]

To rebut their summary judgment evidence, Brown argued that the Contractors "could have added more barricades to the traffic control plan at any time to make [the] area safer." She offered (1) her own affidavit, (2) the affidavits of two experts who stated that improvements could have been made to the Plan and concluded that the Contractors did not follow the Plan, and (3) testimony from the Contractors' employees suggesting that they could have improved on the Plan without TxDOT permission. We review this evidence to determine whether it created a genuine issue of material fact as to whether the Contractors failed to comply with the plan.

Brown's affidavit stated,

> As I approached the stop sign at the intersection of FM 2121 and the Highway, I noticed that construction was underway, and I saw a construction barrel in the middle of the road. However, it offered no indication as to its purpose, offered no indication as to which lane or lanes, if any, might be closed, and it did not impede me from moving northbound into the roadway or turning westbound into the roadway in any way.

> I entered the far right hand westbound lane proceeded westbound on what I thought was the Highway. As I continued onwards, I noticed that there were some additional construction barrels present, though none were located in a lane of travel which caused me to change the way I was going, or informed me I was in a construction zone. I collided with an unmarked, un-barricaded

---

[6]Farrelly testified that he had no trouble concluding that the accident occurred in a barricaded area. Farrelly stated, "I felt like it was well-marked. . . . It wasn't confusing."

6

construction machine that was parked in the right hand westbound lane of the Highway, causing me serious injury.

Brown's affidavit did not discuss the Plan.

Next, Brown offered the affidavit of Dan Price, an expert on the Manual for Uniform Traffic Control Devices. The Contractors argue that Price's affidavit was conclusory. We agree. "Bare, baseless opinions do not create fact questions." *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (orig. proceeding). Thus, "conclusory statement[s] . . . [are] insufficient to create a question of fact to defeat summary judgment." *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003)); *see City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (holding conclusory, baseless testimony to be no evidence). Opinions must be based on "demonstrable facts and a reasoned basis." *Lipsky*, 460 S.W.3d at 593 (citing *Elizondo*, 415 S.W.3d at 265). Price concluded that the Contractors failed to follow the Plan "because they failed to properly channelize traffic away from the construction zone to the travelled way." Although Price pointed out deficiencies in and ways to improve the Plan, his report did not specifically show how the Contractors failed to comply with the Plan. Accordingly, Price's affidavit was conclusory.

Brown also introduced the affidavit of Gary Presswood, a forensic engineer doing business as "The Accident Expert."[7] Presswood examined the Plan, which was signed by TxDOT Design Engineer Kathy G. Dyer. Looking at the Plan papers as a whole, Presswood stated, "The subject

---

[7]Presswood listed many improvements that he would have made to the Plan to make the construction site safer. For purposes of this analysis, we only discuss the portions of Presswood's affidavit relevant to the question of whether the Contractors failed to implement the Plan.

plans generally require 'channeling devices' (typically orange and white striped barrels, Type I, II, & III barricades and other appropriate devices and signage." In his affidavit, Presswood (like Price) concluded that the Contractors did not follow the Plan "because they failed to properly channel[] traffic away from the construction zone to the traveled way." To support his conclusion, Presswood stated that his review of "Video 1" of the construction site revealed a lack of Type III barricades on the west terminus of the project, which he believed was required by the Plan.[8]

Presswood's opinion was not sufficient to create a fact issue on the Section 97.002 affirmative defense because the evidence demonstrated that Brown never traversed the west terminus of the project. Section 97.002 provides immunity from liability for TxDOT Contractors who comply with "contract documents material to the condition or defect that was the proximate cause of the personal injury. . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 97.002. The evidence established that Brown was travelling on Sylvan Road and stopped at a stop sign at the intersection of Sylvan Road and U.S. 82. There was construction on both the right and left side of this intersection on U.S. 82. Brown turned left onto U.S. 82 and travelled westbound. She hit the shuttle buggy, which was well in front of the west terminus of the construction zone. Thus, Presswood's opinion that the Contractors failed to comply with the portion of the Plan allegedly

---

[8]The Contractors argue that, in spite of Presswood's reference to the Plan, his opinion that Type III barriers were required by the Plan is conclusory. "[E]ven when some basis is offered for an opinion, if that basis does not, on its face, support the opinion, the opinion is still conclusory." *Pollock*, 284 S.W.3d at 817. The Barricade and Construction Channelizing Devices Standards state, "Type III barricades shall be used at each end of construction projects closed to traffic." One out of the five pages of the Plan contained this requirement in the general notes. Presswood relied on Video 1 to conclude that the Contractors failed to comply with the Plan. Yet, Video 1 was not introduced as summary judgment evidence. Video 2 and Video 3, which are in our appellate record, do not establish that each end of the construction project is depicted in the video. Thus, the basis of Presswood's conclusion that the Contractors violated the Plan was not before the trial court at the time it ruled on the summary judgment motion.

8

requiring a Type III barrier at the west terminus of the project constituted no evidence that the Contractors failed to comply with contract documents "material to the condition or defect" that caused Brown's injuries.[9]

Moreover, the Plan was not the only document the trial court was to consider in its analysis. The relevant terms of the Contractors' agreement provided,

> 2.      . . . The development and design of the Traffic Control Plan . . . is the responsibility of the Engineer. . . .
>
>         . . . .
>
> 4.      The Contractor is responsible for installing and maintaining the traffic control devices as shown in the plans.  The Contractor may not move or change the approximate location of any device without the approval of the Engineer. . . .
>
>         . . . .
>
> 9.      The temporary traffic control devices shown in the illustration of the BC sheets are examples.  As necessary, the Engineer will determine the most appropriate traffic control devices to be used. . . .
>
>         . . . .
>
> 12.     The Engineer has the final decision on the location of all traffic control devices.

Harper, who had the final say on the location of traffic control devices as the TxDOT engineer, testified that the Contractors had complied with the Plan.[10]

---

[9]Also, although the project was conducted in three phases, Presswood failed to specify which portion of the Plan applied to the phase of construction that was occurring at the time of the accident.  The remaining four pages of the Plan demonstrated that it called for either "Type III barricades or channelizing devices."  The "Paris District . . . Traffic Control Plan For Use With Projects That Include Surfacing," which was signed by Dyer, did not mention Type III barricades.

[10]Presswood also opined that the shuttle buggy was not parked thirty feet from the travelled way.  Yet, the location of the shuttle buggy was not discussed in Brown's reply to the Contractors' summary judgment motions.  In any event,

Brown also attempted to create a fact issue by introducing evidence from J.D. Rodgers, project superintendent for RK Hall, who testified that additional traffic control devices could be added to the Plan. Reeves testified that, as a TxDOT employee, he could add traffic control devices to the Plan. However, when asked if the Contractors could add something without TxDOT approval, Reeves stated, "That would be engineering to answer that." In any event, testimony that additional safety precautions could have been taken was not evidence that the Contractors failed to comply with contract documents material to the condition or defect that caused Brown's injuries.

We conclude that the trial court properly granted the Contractors' traditional motion for summary judgment. Accordingly, we affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted: July 5, 2016
Date Decided: July 27, 2016

---

"[t]o constitute proper summary judgment evidence, an affidavit must be made on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competence." *Braxton v. Chin Tuo Chen*, No. 06-10-00134-CV, 2011 WL 4031171, at *7 (Tex. App.—Texarkana Sept. 13, 2011, pet. denied) (mem. op.) (quoting *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894 (Tex. App.—Texarkana 2009, pet. denied) (citing TEX. R. CIV. P. 166a(f)). "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Id.* (citing *Cammack the Cook*, 296 S.W.3d at 894). The sole support for Presswood's conclusion was that the videos "confirm[ed] a lateral dimension much closer to 18–20 [feet]." "Conclusory statements based on opinion are insufficient to raise a question of fact to defeat summary judgment." *Id.* (citing *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003)). Without additional explanation of how Presswood came to this conclusion, such as a discussion of the width of the lanes (or any other indication that he could judge the horizontal distance from pictures and video depicting vertical distance), his opinion was not based on personal knowledge and amounted to nothing more than conjecture, which is not appropriate summary judgment evidence.

10