

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00258-CV

SCR CIVIL CONSTRUCTION LLC, APPELLANT

V.

DAVID DIMOCK, APPELLEE

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 28,990, Honorable Cornell Curtis, Presiding

March 4, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

In this interlocutory appeal,[1] Appellant, SCR Civil Construction LLC, appeals from an order in favor of appellee, David Dimock, denying SCR's no-evidence and traditional summary judgment motions in Dimock's action premised on negligence and premises liability. On appeal, SCR contends (1) its evidence conclusively establishes its immunity

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.104(a)(15) ("A person may appeal from an interlocutory order of a district court . . . that . . . grants or denies a motion for summary judgment filed by a contractor based on Section 97.002."). Throughout the remainder of this opinion, provisions of the Texas Civil Practice and Remedies Code will be cited as "section ____" and "§ ___."

under section 97.002 of the Texas Civil Practice and Remedies Code, and (2) the trial court abused its discretion by overruling its objections to Dimock's summary judgment evidence. We affirm.

## Background

The facts relevant to this appeal are as follows: in February 2018, SCR was performing construction work on the bridge near the intersection of Farm-to-Market Road 433 and U.S. Highway 287 in Wilbarger County. Pursuant to a contract with the Texas Department of Transportation, the bridge's deck had been removed, and subcontractors were cleaning up debris that had fallen below the bridge onto the intersecting road.

Around 8:00 a.m. on February 28, 2018, Dimock was driving a pickup on Highway 287 and exited onto the FM 433 ramp. At the time, no traffic control devices (such as "Bridge Out" signage, barricades, and other warning devices) blocked Dimock's access to the FM 433 bridge.[2] As Dimock drove on, he suddenly realized a portion of the bridge was missing and applied his brakes. Nevertheless, the front end of his pickup slid over the pavement's edge and dropped approximately one to two feet onto the bridge's deck. Dimock sued SCR[3] in district court, alleging he sustained personal injuries because of SCR's general negligence, as well as under a premises defect theory.

---

[2] According to a property damage report prepared by Darryl Roberts, two "type 3 barricades" (typically used to indicate road closures) were later found across the road and an eight-foot "Bridge Closed" sign was "nowhere to be found." During his deposition, Roberts said the barricades had been "stacked up."

[3] Dimock filed his original petition on February 12, 2020, against SCR and Lloyd D. Nabors Demolition, LLC. Dimock agreed to nonsuit Nabors, and the trial court issued an order for nonsuit with prejudice in November 2021.

Section 97.002 provides that a contractor who constructs or repairs a road for TxDOT is not liable for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of accident, "the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death." TEX. CIV. PRAC. & REM. CODE ANN. § 97.002. At its core, this appeal tests whether SCR conclusively proved that it was in compliance with the relevant contracting documents at the time of Dimock's accident. The trial court denied SCR's (second) no evidence and traditional motions for summary judgment[4] and overruled SCR's objections to Dimock's summary judgment evidence.

SCR's Position

SCR was the general contractor for the bridge project according to a contract with TxDOT; it repeatedly characterized the traffic control devices as "missing" at the time of Dimock's accident. Per the TxDOT contract, SCR alleges it was required to replace "missing" traffic control devices within 24 hours after receiving notice. SCR relies on the affidavit of its project superintendent in charge of the traffic control devices, Darryl Roberts, who states he had found the control devices to be in place when he "inspected"[5] the jobsite at 7:30 p.m. on February 27, approximately 12 hours before the accident.[6]

---

[4] SCR's motion was filed April 12, 2023. It was denied on June 27, 2023.

[5] During his deposition, however, Roberts said, "When I drove by, everything that we had put there was there."

[6] Roberts' affidavit says in relevant part, "On February 27, 2019, at approximately 7:30 p.m., I inspected the barricades and warning signs indicating that the FM 433 bridge was closed. At that time, the barricades and warning signs were in place. I received no notice that the barricades and warning signs . . . were missing from the time I completed my inspection on the evening of February 27, 2018 until [I] arrived at the FM433 bridge at approximately 8:00 a.m. on February 28, 2018." (ellipsis added).

Theorizing that the control devices must have "gone missing" and/or were moved between the time Roberts said he performed his inspection and the time of Dimock's accident, SCR argues it was in compliance with its contract when Dimock entered onto the FM 433 bridge. In other words, SCR argues the district court erred in denying SCR's immunity via summary judgment because the contractor had not breached the 24-hour obligation to remedy the "missing" control devices.[7]

Dimock's Position

In addition to Dimock's testimony about the accident, the Appellee presented an affidavit of Jeff Harts, who is also employed in road construction. Harts stated that at 6:00 p.m. on February 27, he was traveling on FM 433 and approached the bridge. He said that as he did so, "I saw that there were no barricades in place blocking traffic from crossing the bridge. It was apparent that the road leading up to the bridge had been cleared so dump trucks that were present could enter and exit to and from the bridge platform."

Dimock also criticized the accuracy of Roberts' memory, directing the trial court to deposition testimony wherein Roberts said he has been diagnosed with an onset of Alzheimer's, and although he remembers "most things," he suffers from "cognitive

---

[7] SCR also argued it was entitled to summary judgment on the merits of Dimock's premises liability claim, claiming there is no evidence that SCR knew the "missing" traffic control devices posed an unreasonable risk of danger. *See Gilbert v. Gilvin-Terrill, Ltd.*, No. 07-07-00206-CV, 2008 Tex. App. LEXIS 4348, at *10 (Tex. App.—Amarillo June 12, 2008, no pet.) (affirming grant of no-evidence motion for summary judgment). However, that argument does not comprise the affirmative defense of immunity serving as the basis for our exercising jurisdiction over this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.104(a)(15) (permitting interlocutory appeal from denied motion for summary judgment "filed by a contractor based on Section 97.002.") (emphasis added).

memory loss." Moments later, Roberts said, "There's just a lot of things I can't remember. I remember a lot about this day."

There is some testimony suggesting that Roberts' crew had moved some of the barricades as early as February 26, two days before the accident. In addition, Dimock proffered Roberts' testimony wherein he said that on the morning of February 28, before the accident, Roberts drove underneath the FM 433 bridge, and could not see the "Bridge Out" sign. The parties offer differing explanations as to why that could be the case.

**Analysis**

As noted above, when a TxDOT contractor is in substantial compliance with the contract documents material to the defect that was the proximate cause of an injury, section 97.002 affords the contractor immunity from liability for any injury resulting from the performance of the construction or repair. TEX. CIV. PRAC. & REM. CODE ANN. § 97.002. Immunity under section 97.002 is an affirmative defense. *Brown v. RK Hall Constr., Ltd.*, 500 S.W.3d 509, 514 (Tex. App.—Texarkana 2016, pet. denied).

SCR's theory in the trial court and on appeal is that it was in compliance with its contract notwithstanding the "missing" traffic control devices because Roberts said he had "inspected" the placement of the barricades and warning signs and found them to be proper approximately 12 hours before the accident. Presuming Roberts' statement to be true, SCR then reasons the signs must have "gone missing" due to windy conditions or an act of vandalism.

SCR misunderstands its summary judgment burden. When a party moves for summary judgment on an affirmative defense, it bears the burden of proof. *Brown*, 500

5

S.W.3d 509, 512 (Tex. App.—Texarkana 2016, pet. denied) (*citing Peachtree Const., Ltd. v. Head*, No. 07-08-00020-CV, 2009 WL 606720, at *3 (Tex. App.–Amarillo Mar. 10, 2009, no pet.) (mem. op.). Our Supreme Court has taught for more than 50 years that this requires SCR to <u>conclusively</u> prove each element of its affirmative defense when it pursues the defense at summary judgment. *See Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021)*; Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).

That Roberts was the last human to view the jobsite where he said he viewed traffic control devices in their proper place is not effective in serving as conclusive summary judgment evidence. "Undisputed evidence and conclusive evidence are not the same— undisputed evidence may or may not be conclusive, and conclusive evidence may or may not be undisputed." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Undisputed evidence only becomes conclusive when there is only a <u>single</u> logical inference, i.e., when "reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *Id.* at 815–16.[8] SCR failed to present conclusive evidence.

SCR's theory that it complied with its contractual requirements regarding traffic control devices on February 28 fatally depends on an assumption that no reasonable person could disbelieve Roberts' statements about what he observed the night before. But summary judgment is inappropriate if the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case. *Casso v. Brand*, 776 S.W.2d 551,

---

[8] As a reviewing court, we are required to examine the record in the light most favorable to Dimock as the non-moving party, and to "indulg[e] every reasonable inference and resolv[e] any doubts against" SCR's motion. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021) (affirming rejection of summary judgment motion because defendant did not conclusively establish affirmative defense).

558 (Tex. 1989). Though jurors at trial might ultimately agree with SCR, we find that the state of this record is such that reasonable jurors could disagree about whether Roberts' statements were untrue, or misinformed, or inaccurate due to a loss of memory. The trial court was thus required to deny SCR's motion for summary judgment.

We hold the trial court correctly denied the motion for summary judgment because SCR did not prove each element of its affirmative defense with conclusive evidence. At bottom, reasonable jurors could determine that Roberts' proffered testimony was either true or untrue, rendering such evidence to be inconclusive as a matter of law. *City of Keller*, 168 S.W.3d at 815. SCR's first issue is overruled.

Because SCR failed to carry its summary judgment burden, it was unnecessary for Dimock to present any controverting evidence in response. *See Casso*, 776 S.W.2d at 556 (Tex. 1989). Accordingly, we decline to consider SCR's second issue regarding whether portions of Dimock's summary judgment evidence were admissible. TEX. R. APP. P. 47.1; *Heinert v. Wichita Falls Hous. Auth.*, 441 S.W.3d 810, 824 (Tex. App.—Amarillo 2014, no pet.).

## Conclusion

The judgment of the district court is affirmed.

Lawrence M. Doss
Justice

7