Opinion issued March 6, 2025



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00378-CV

———————————

**WEBBER, LLC, Appellant**

**V.**

**MUBARAK MUBARAK, Appellee**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-44299**

---

## OPINION

Appellant Webber, LLC contracted with the Texas Department of Transportation to build and improve portions of Interstate 10 ("I-10") in Austin County, Texas. Appellee Mubarak Mubarak was driving his truck on I-10 when his truck was struck by a piece of rebar that Webber recently had placed over freshly

poured concrete on an I-10 overpass. Mubarak sued Webber for negligence and Webber moved for summary judgment asserting immunity under Section 97.002 of the Texas Civil Practice and Remedies Code. After a hearing, the trial court denied Webber's motion for summary judgment.

In this interlocutory appeal, Webber argues the trial court erred in denying its summary judgment motion because it conclusively established the requirements for immunity under Section 97.002 of the Texas Civil Practice and Remedies Code and Mubarak failed to raise a genuine issue of material fact precluding summary judgment.[1] We conclude the trial court abused its discretion in denying Webber's motion for summary judgment. Webber, a Texas Department of Transportation contractor, conclusively established that at the time of Mubarak's alleged personal injury and property damage, it was in compliance with the contract provisions material to the condition that was the proximate cause of Mubarak's alleged injury, and Mubarak failed to present evidence creating an issue of material fact precluding summary judgment. Webber was thus entitled to immunity under Section 97.002.

We reverse and render.

---

[1]   *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(17) (authorizing interlocutory appeal from order that "grants or denies a motion for summary judgment filed by a contractor based on Section 97.002" of Texas Civil Practice and Remedies Code).

## Background

Appellant Webber, LLC contracted with the Texas Department of Transportation ("TxDOT") to rebuild and improve portions of I-10 in Austin County, Texas, including an overpass at I-10 and Chew Road in Sealy, Texas ("Chew Road overpass"). On October 11, 2020, Mubarak was driving on an I-10 feeder road in Sealy when a 100-pound piece of rebar fell from the Chew Road overpass and traveled into and through the windshield of Mubarak's truck.[2] Webber had recently poured fresh concrete on the overpass and covered the concrete with wet cotton mats and plastic as required by the concrete "wet curing" specifications in its contract with TxDOT ( "TxDOT Contract"). As part of the "wet curing" process, which required that the cotton mats and plastic be weighted down for a period of ten days, Webber used rebar to weigh down the mats and plastic to ensure they remained in direct contact with the fresh concrete during the ten-day curing period. The accident occurred on a Sunday when no Webber employees were working at the Chew Road overpass construction site. According to Webber, on that day, there was "an unexpected wind gust of 35 miles per hour that had not been forecast for the area" that "pushed the mats and plastic causing the rebar to go over the side of the Chew Road overpass" striking Mubarak's truck.

---

[2]   Mubarak, who works transporting cars from one state to another, testified in his deposition that the rebar did not hit him personally, he did not hit the inside of his truck when the impact occurred, and no air bags deployed. After pulling over, he continued driving to Kermit, Texas that same day for his job.

3

Mubarak alleges he sustained serious personal injuries and property damage because of the accident. He sued Webber for negligence, alleging Webber negligently or carelessly "dropp[ed]" a piece of rebar onto his truck, failed to use reasonable and ordinary care toward him, failed to properly secure and/or maintain control of the rebar, failed to implement and enforce reasonable safety plans, policies, and procedures, and failed to hire and train competent employees and/or contractors. Mubarak also pleaded the doctrine of *res ipsa loquitur*, arguing he would not have been injured but for Webber's negligence, and the instrumentality that caused his injury was under Webber's exclusive control.

Webber filed a general denial and relevant to this appeal, it asserted immunity under Section 97.002 of the Texas Civil Practice and Remedies Code. Section 97.002 provides:

> A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death.

TEX. CIV. PRAC. & REM. CODE § 97.002. Webber filed a traditional motion for summary judgment arguing it was entitled to immunity under Section 97.002 because it had established conclusively that at the time of the accident, it was in compliance with the TxDOT Contract's specifications for construction of the Chew

4

Road overpass material to the condition or defect that was the proximate cause of Mubarak's alleged injuries.[3]

Webber argued that it was in compliance with the material provisions of the TxDOT Contract because the contract specifications for Concrete Pavement (Item 360) and Concrete Superstructures (Item 422) required the use of "wet curing" when pouring fresh concrete on superstructures, such as the Chew Road overpass. Webber explained that pursuant to those contract specifications, shortly after concrete is poured, cotton mats are laid atop the fresh concrete, wetted down, and then covered in plastic. The mats and plastic must then be weighted down so that the mats are in continuous contact with the fresh concrete during a ten-day curing period. Webber argued that "the use of rebar during the wet curing process [to weigh down the mats and plastic] is industry standard, and TxDOT never found Webber out of compliance with its contract due to the use of rebar during this

---

[3] Webber also filed a no-evidence motion for summary judgment, arguing that because Mubarak's negligence claim was in essence a "premises liability claim" and Mubarak was a licensee, Mubarak was required to establish that "at the time of the incident," Webber "had actual knowledge that a condition on its project created an unreasonable risk of harm" to Mubarak. Webber argued that Mubarak had no evidence of actual knowledge and thus summary judgment was proper. Because Webber filed the present interlocutory appeal under Section 51.014(a)(17), we may review only the denial of Webber's traditional motion for summary judgment based on statutory immunity, and we may not address Webber's no-evidence motion for summary judgment or any arguments concerning Mubarak's alleged failure to produce evidence of Webber's knowledge. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(17). We thus limit our review to Webber's assertion of immunity under Section 97.002.

process."[4] In support of its summary judgment motion, Webber attached excerpts from the deposition of its senior project manager Jonathan Weiser, Weiser's unsworn declaration, excerpts from the TxDOT Contract, and a meteorologist's report.[5]

In his summary judgment response, Mubarak argued that Section 97.002 was inapplicable because Webber had not established conclusively that it was "in compliance with" the relevant contract documents at the time of the accident. Mubarak first argued that because there was no provision in the TxDOT Contract authorizing the use of rebar to weigh down the cotton mats and plastic during the wet curing process, Webber had not established it was in compliance with the "contract documents material to the condition or defect" giving rise to Mubarak's injuries. Second, Mubarak argued that the summary judgment evidence established Webber had not complied with Section 7.2.4 of the TxDOT Contract,[6] which

---

[4] As part of the TxDOT Contract, Webber was required to comply with the contract specifications requiring the use of wet curing when pouring concrete on superstructures such as an overpass. Those specifications are Special Provision 360 (Concrete Pavement) and Special Provision 422 (Concrete Superstructures). Item 360 explains the curing process, including how to cover fresh concrete. Item 422 describes the materials to be used in the curing process, but it does not specify which material is to be used to weigh down the cotton mats and plastic placed on the curing concrete.

[5] Weiser was Senior Project Manager for Webber on the construction project at issue.

[6] Section 7.2.4 of the Contract, entitled "Public Safety and Convenience," provides:

> Ensure the safety and convenience of the public and property as provided in the Contract and as directed. Keep existing roadways

6

required Webber to "maintain the roadway in a good and passable condition." Last, Mubarak argued that Webber had violated Section 4.8.1[7] of the TxDOT Contract by "failing to adequately weight the mats and anchor the enclosure to the ground[,] which resulted in the launch of rebar onto [Mubarak's] vehicle." Mubarak objected to portions of Weiser's declaration as speculative, hearsay, and conclusory and to the meteorologist's report in its entirety as hearsay, irrelevant, and conclusory.[8]

Webber replied that the absence of a contractual provision expressly calling for the use of rebar to weigh down the cotton mats and plastic during the wet curing process was irrelevant because Webber complied with TxDOT's "plans and specifications" for "cover[ing] freshly-poured concrete on an overpass with cotton blankets and plastic" and subsequently "weigh[ing] down the mats and plastic." Webber argued that Weiser's deposition testimony and declaration established

open to traffic or construct and maintain detours and temporary structures for safe public travel. Manage construction to minimize disruption to traffic. Maintain the roadway in a good and passable condition, including proper drainage and provide for ingress and egress to adjacent property.

[7] Section 4.8.1 of Contract Item 422 provides:

Cotton Mats. Keep the concrete continuously wet by maintaining wet cotton mats in direct contact with the concrete for the required curing time. Weigh the mats adequately to provide continuous contact with all concrete. Cover surfaces that cannot be cured by direct contact with mats, forming an enclosure well anchored to the forms or ground so outside air cannot enter the enclosure.

[8] Mubarak attached to his summary judgment response Section 7.2.4 of the TxDOT Contract, his deposition, Weiser's deposition, and the police report from the accident.

conclusively that at the time of Mubarak's alleged injuries, Webber was in compliance with Section 4.8.1. of the TxDOT Contract, stating:

> At no point during the I-10 Project did TxDOT or its representatives inform Webber that the use of rebar violated the I-10 Project requirements or specifications. Stated otherwise, TxDOT did not inform Webber that it was out of compliance with the construction contract by using rebar during the wet curing process.

Webber argued Mubarak had proffered no evidence establishing it was out of compliance with the TxDOT Contract or raising an issue of material fact precluding summary judgment. Last, Webber argued that Section 7.2.4 of the TxDOT Contract, a "generic safety provision included in every TxDOT contract," was irrelevant because Section 97.002 refers to contract documents that are "material to the condition or defect that was the proximate cause of the [alleged] personal injury" and Section 7.2.4 "did not create the situation where rebar could potentially fly off an overpass."

During the summary judgment hearing, the trial court ruled on Mubarak's objections to Webber's summary judgment evidence, sustaining Mubarak's objection to one paragraph in Weiser's declaration and to the meteorologist report that discussed the wind speed on the day of the accident and "how this [accident]

8

could have happened."[9]  Following the hearing, the trial court signed an order denying Webber's traditional and no-evidence motion for summary judgment.

This interlocutory appeal ensued.

## Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)).

The party moving for traditional summary judgment bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to

---

[9]   The trial court sustained Mubarak's objection to paragraph 8 of Weiser's declaration, where Weiser discusses the "unexpected wind gust that had not been forecasted for the area," which "reached 35 miles per hour," and which allegedly "caused the rebar to be thrown into the air from the Chew Road overpass." Paragraph 8 concludes with Weiser's statement that "[t]his type of incident had never been encountered by Webber before or after the incident involving Mubarak."  Weiser presented this evidence and the meteorologist report presumably to establish it lacked "actual knowledge that a condition on its project created an unreasonable risk of harm" as it argued in its no-evidence summary judgment—an issue we do not address in this opinion.  The wind speed on the day of the accident or the reasons the rebar flew from the overpass are not relevant to our immunity analysis.  We thus need not address whether the trial court erred in sustaining the objections to Weiser's declaration paragraph 8 or the meteorologist report addressing wind speeds.

9

judgment as a matter of law. *Mann*, 289 S.W.3d at 848 (citing TEX. R. CIV. P. 166a(c)). A party who moves for traditional summary judgment on an affirmative defense, such as immunity from liability, must conclusively establish each element of its defense. *See Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021); *Zimmerman v. Anaya*, No. 01-07-00570-CV, 2011 WL 1234685, at *2 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, pet. denied) (mem. op.) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)). Evidence is conclusive only if "reasonable people could not differ in their conclusions." *Helix Energy Sols. Grp., Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Morgan v. City of Alvin*, 175 S.W.3d 408, 413 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Evidence raises a genuine issue of material fact if reasonable jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Townsend v. Hindes*, 619 S.W.3d 763, 770 (Tex. App.—San Antonio 2020, no pet.).

**Discussion**

In its sole issue on appeal, Webber argues it is entitled to immunity under Section 97.002 of the Texas Civil Practice and Remedies Code because its summary judgment evidence conclusively established it contracted with TxDOT to build a highway and that at the time of the accident, it was in compliance with the contract documents material to the condition that was the proximate cause of Mubarak's alleged injuries. Specifically, Webber argues it was in compliance with the contract specifications for Concrete Pavement (Item 360) and Concrete Superstructures (Item 422), which set forth the wet curing process contractors must follow when pouring fresh concrete on "superstructures" such as the Chew Road overpass.

Mubarak concedes that a TxDOT contractor performing construction on behalf of the state may not be held liable for damage or injury resulting from work performed in compliance with contract documents set by the State. Indeed, it is well-settled that when a TxDOT contractor is in compliance with the contract documents material to the condition that was the proximate cause of an injury, Section 97.002 affords the contractor immunity from liability for any injury resulting from the performance of the construction or repair. *See* TEX. CIV. PRAC. & REM. CODE § 97.002; *see also Brown v. RK Hall Constr., LTD.*, 500 S.W.3d 509, 511 (Tex. App.—Texarkana 2016, pet. denied) (holding contractors were entitled to immunity under Section 97.002 because they "conclusively established their

11

compliance with material portions of the TxDOT plan"); *ISI Contracting, Inc. v. Markham*, 647 S.W.3d 489, 502 (Tex. App.—San Antonio 2022, pet. denied) (same).

The parties agree that at all relevant times, Webber was a TxDOT contractor responsible for construction of the Chew Road overpass from where the rebar fell. Thus, the only question before us is whether at the time of the alleged accident giving rise to Mubarak's alleged personal injury and property damage, Webber was in "compliance with contract documents material to the condition or defect that was the proximate cause of [Mubarak's alleged] personal injury [and] property damage." *See* TEX. CIV. PRAC. & REM. CODE § 97.002. The contract documents must be "material to the condition or defect that was the proximate cause of the personal injury" for immunity to attach under Section 97.002. *Brown*, 500 S.W.3d at 514.[10]

---

[10] Both parties cite to the bill analysis for Section 97.002, which states that a contractor performing highway repairs on behalf of the state "may not be held liable for damage or injury resulting from work performed *in substantial compliance with* contract documents set by the state." *See* House Comm. on Civ. Practices, Bill Analysis, Tex. H.B. 1699, 78th Leg., R.S. (2003) (emphasis added). The bill analysis is not relevant to our review. First, as the Texas Supreme Court has said, "[*l*]egislative history is generally useless to courts—indeed, it can be worse than useless because it is manipulable and relies on what *never* was the law." *Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023) (emphasis in original). Second, the bill analysis, which references the language "in substantial compliance with," predates the final version of Section 97.002, which deleted the language "in substantial compliance with" and states only "in compliance with." *See* TEX. CIV. PRAC. & REM. CODE § 97.002. And last, we need not delve into that distinction here because the parties have not raised the issue, instead agreeing that

12

Murabak advances several arguments to support his position that Webber is not entitled to immunity under Section 97.002. While Mubarak concedes "that the material [contract] documents are Items 360 and 422, which are concerned with insuring that Webber properly cures freshly poured concrete," he argues that Webber is not entitled to immunity because those contractual provisions are not "material to the condition or defect that was the proximate cause of the personal injury [and] property damage" sought by Mubarak. According to Mubarak, the relevant "condition or defect" was Webber's unilateral decision to use rebar. Mubarak argues that Items 360 and 422 do not require Webber to use rebar to weigh down the cotton mats and plastic for the wet curing process. Rather, Webber's decision to use rebar to weigh down the mats and plastic was a judgment call made by Webber and such unilateral decision-making does not give rise to immunity. Mubarak argues that the Legislature enacted Section 97.002 to shield contractors who construct or repair highways for TxDOT from liability only "in situations where it is affirmatively shown that the contractors complied with TxDOT specifications over which they had no control." Mubarak also argues that Webber breached the TxDOT Contract because the contract required "something sufficiently heavy 'so that air cannot get under the plastic' or 'under the mats,'" and "the use of rebar was not sufficient to accomplish the requirement of the contract

"substantial compliance" is the standard, and whether the statute requires "substantial compliance" or not, we reach the same result.

13

that air not get under the plastic and mats" as evidenced by the fact rebar flew off the Chew Road overpass.[11]

For the reasons set forth below, we reject Mubarak's arguments and conclude Webber is entitled to immunity under Section 97.002.

### Compliance with Contract Documents

In arguing it complied with the TxDOT Contract, Webber relies on its summary judgment evidence establishing Webber followed the required wet curing process and that the use of rebar during the wet curing process is the "industry standard." Weiser testified in his deposition that in the week prior to the accident, Webber:

> had poured the Chew bridge deck. And in doing so, as part of our specification and practice that we have to do a wet cure on the bridge deck using cotton blankets and plastic.

---

[11] Mubarak does not re-urge on appeal the argument he advanced in his summary judgment response that Mubarak failed to comply with Section 7.2.4 of the TxDOT Contract concerning "Public Safety and Convenience," which contained a general instruction to "[m]aintain the roadway in a good and passable condition." Webber argues in its reply brief that "by his omission on appeal, Mubarak concedes that the generic provisions in Section 7.2.4 of the TxDOT Contract are immaterial to the condition at issue in this case." Whether or not Mubarak conceded this point "by omission" in his appellate brief, we agree with Webber that Section 7.2.4 of the TxDOT contract is not the material provision relevant to our immunity analysis because the provision is not "material to the condition or defect that was the proximate cause" of Mubarak's alleged personal injury and property damage. *See* TEX. CIV. PRAC. & REM. CODE § 97.002; *see also A.S. Horner, Inc. v. Navarrette*, 656 S.W.3d 717, 725 (Tex. App.—El Paso 2022, no pet.) (stating contract documents to be considered in immunity analysis must be "relevant to the condition or defect a plaintiff alleges as a cause of the claimed injury").

14

So in that process, you lay out the cotton blankets and plastic the day of the concrete pour, and you have to cure it for 10 days. And during that curing process, it has to be weighted down to maintain complete contract with the concrete that's being cured.

So rebar is used as weights on the bridge deck to secure the plastic and cotton blankets that are used for the curing. So that rebar was on the bridge deck acting as a weight to the blankets in the curing process.

. . .

There is no document that dictates the pattern for the rebar. The [TxDOT Contract documents] require that the plastic maintain contact with the concrete during the cure. And so, to do that rebar—the industry standard is to use rebar and lay it out to maintain that contact. To maintain a light pressure.

It's fresh concrete that's been poured. So you can't use anything significantly heavier then rebar. It's the perfect thing to use to weight down the plastic and the mats. And that's what we've always done. That's the only procedure that I'm aware of to keep the plastic in place and weigh it down evenly.

Weiser also testified that Webber's "practice and the industry standard is to use rebar [be]cause it's readily available construction material that can be easily managed on top of wet concrete[.]" He testified that the use of rebar "has served Webber for many, many years and been very successful" and that this was the first instance of rebar "falling from an overpass and causing damage." Webber also relied on Weiser's declaration, in which he testified that:

TxDOT representatives were present on the I-10 Project on a nearly daily basis. . . . At no point during the I-10 Project did TxDOT or its representatives inform Webber that the use of rebar to weigh down

15

cotton blankets during the wet curing process was contrary to or violated the I-10 Project requirements or specifications.

Mubarak presented no evidence to refute Weiser's testimony that the use of rebar to weigh down mats and plastic during the wet curing process is industry standard or his testimony that TxDOT representatives were present on the I-10 project on a "nearly daily basis" and never informed Webber that the use of rebar during this process was out of compliance with the TxDOT Contract. Mubarak nonetheless argues that because the TxDOT Contract did not expressly state that Webber could use rebar to weigh down the mats and plastic during the wet curing process, Webber's use of rebar could not have been "in compliance" with the contract documents material to the condition or defect that was the proximate cause of his personal injury and property damage. He argues that because Webber had discretion to select the materials used to weigh down the mats and plastic, its use of rebar cannot establish compliance with the TxDOT Contract. We find this argument unpersuasive.

The TxDOT specifications neither specify nor proscribe the use of rebar for the wet curing process. Rather, the specifications require the use of wet curing when pouring fresh concrete on superstructures such as an overpass. Pursuant to Items 360 and 422, on the day the concrete is poured, cotton blankets are laid atop the poured concrete, wetted down, and then covered in plastic. And germane to the issue here, the blankets and plastic must be weighted down to allow the blankets to

16

remain in continuous contact with the fresh concrete during a ten-day period. Webber presented evidence that it complied with this required procedure by using rebar to weigh down the blankets and plastic, which the uncontested evidence established is the industry standard.

Mubarak insists that because Webber's decision to use rebar was discretionary, immunity cannot attach. Relying on *ISI Contracting, Inc. v. Markham*, he argues that Section 97.002 is intended to shield contractors who construct or repair highways for TxDOT from liability purportedly only "in situations where it is affirmatively shown that the contractors complied with TxDOT specifications over which they had no control." 647 S.W.3d at 496; *see also A.S. Horner, Inc. v. Navarrette*, 656 S.W.3d 717, 726 (Tex. App.—El Paso 2022, no pet.) (same). Mubarak argues that because Webber had control over the material it chose—rebar—to weigh down the cotton mats and blankets and ensure proper curing of the concrete, Section 97.002 is inapplicable. According to Mubarak, because Webber's decision to use rebar was a "judgment call," Webber is not entitled to immunity, because the "condition or defect" that proximately caused his injuries stemmed from Webber's "unilateral decision to use rebar as a weight even though rebar was not required by the contract documents." We disagree.

Section 97.002 provides statutory immunity to a contractor "when the contractor is in compliance with contract documents material to the condition or

17

defect that was the proximate cause of the personal injury [or] property damage." TEX. CIV. PRAC. & REM. CODE § 97.002. There is no language in Section 97.002 suggesting that immunity does not apply when the relevant contractual provision affords the contractor some level of discretion in how to perform its contractual duties. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014) ("We take statutes as we find them, presuming the Legislature included words that it intended to include and omitted words it intended to omit."). Taking Mubarak's argument to its logical conclusion, because no material is specified for use in the TxDOT Contract to weigh down the mats and plastic, there could never be immunity for injuries related to the weighing down process during the wet curing process, regardless of the materials used.[12] Such an interpretation is strained, especially given that even evidence that additional safety precautions could have been taken does not establish a failure to comply with contract documents for purposes of Section 97.002. *See Brown*, 500 S.W.3d at 515 ("[T]estimony that additional safety precautions could have been taken was not evidence that the Contractors failed to comply with contract documents material to the condition or defect that caused Brown's injuries.").

*ISI Contracting* also does not support Mubarak's argument. In explaining that contractors who construct or repair highways for TxDOT are shielded from

---

[12] Weiser testified that he was not aware of Webber using any material other than rebar to weigh down mats during the wet curing process on any project.

18

liability "in situations where it is affirmatively shown that the contractors complied with TxDOT specifications over which they had no control," the court did not generally hold, as Mubarak suggests, that any exercise of discretion by a TxDOT contractor in carrying out a contract requirement removes the contractor from the purview of Section 97.002. Rather, the *ISI Contracting* court was merely clarifying that Section 97.002 does not "provide blanket immunity to a TxDOT contractor or subcontractor against all claims for any circumstances, such as a tort claim or contract dispute between a TxDOT contractor and its subcontractors," a statement with which we do not disagree. *See ISI Contracting*, 647 S.W.3d at 496. In any event, we need not decide whether discretionary acts in general inform an analysis under Section 97.002, because here, contrary to Mubarak's argument, the evidence established that Webber was required to comply with the wet curing requirements in the TxDOT Contract's specifications and that Webber complied with that requirement, because it had no discretion not to.

The evidence further established that Webber used rebar, the industry standard, to weigh down the cotton mats and plastic during the wet curing process and that TxDOT representatives visited the project on an almost daily basis and did not inform Webber it was out of compliance with the contract. Webber argues this evidence conclusively established its compliance with the TxDOT Contract. Webber relies on *Brown v. RK Hall Construction*, where the court held that TxDOT

19

contractors, having never been informed of noncompliance with a contract by the construction project owner despite numerous inspections by TxDOT, were entitled to immunity under Section 97.002. 500 S.W.3d at 512, 515. We agree that *Brown* is instructive.

In *Brown,* the plaintiff ("Brown") drove into a construction zone immediately after midnight, colliding with a piece of construction machinery resulting in serious injuries. *Id.* at 510. Law enforcement reported that Brown disregarded a warning sign, driving into a barricaded construction zone, but Brown argued that the barricades were in the middle of the highway and did not indicate which lane was closed. *Id.* Brown sued the TxDOT contractors alleging they failed to create and implement a safe traffic control plan. *Id.* The contractors argued they complied with the material portions of TxDOT's traffic control plan for the construction project. *Id.* at 511. An employee of the contractors "testified that the Contractors were never informed that any traffic control device was out of place, even though TxDOT inspected the construction site on a daily basis." *Id.* at 512. A TxDOT inspector also testified that he inspected the construction site before leaving for the day in the hours before the accident and that "everything was in its proper place" before the accident. *Id.* The trial court granted summary judgment in favor of the contractors on immunity grounds and the court of appeals affirmed. The court concluded that Brown's expert, who opined the contractors had not complied with

certain portions of TxDOT's construction plan unrelated to the accident, provided no evidence that the contractors had not complied with contract documents "material to the condition or defect" that caused Brown's injuries. *Id.* at 513–14.[13]

We find *Brown* persuasive. Although Webber did not proffer testimony from any TxDOT officials, Webber established through Weiser's uncontroverted testimony that the use of rebar for weighing down mats and plastic during the wet curing process is industry standard and that TxDOT representatives inspected the construction project "on a nearly daily basis" and never advised Webber that the use of rebar in the curing process "was contrary to or violated the I-10 Project requirements or specifications." Mubarak offered no evidence to the contrary. We thus conclude that Webber conclusively established compliance with the TxDOT contract documents material to the condition that was the proximate cause of Mubarak's alleged injuries entitling it to immunity under Section 97.002. *See id.*; *see also ISI Contracting*, 647 S.W.3d at 502 (reversing denial of summary judgment motion based on Section 97.002, holding summary judgment conclusively

---

[13]     Brown's expert testified that the construction site revealed a lack of certain types of barricades on the "west terminus" of the construction project, but Brown's accident occurred "well in front of the west terminus of the construction zone." *Brown v. RK Hall Constr., LTD.*, 500 S.W.3d 509, 514 (Tex. App.—Texarkana 2016, pet. denied). Thus, the court held, the expert's opinion that the contractors "failed to comply with the portion of the Plan allegedly requiring a Type III barrier at the west terminus of the project constituted no evidence that the Contractors failed to comply with contract documents 'material to the condition or defect' that caused Brown's injuries." *Id.*

21

established that TxDOT engineer's approval and acceptance of work "determine[d] as a matter of law that [appellants] were in 'compliance with contract documents material to the condition or defect that was the [alleged] proximate cause of the personal injury, property damage, or death'").

**Mubarak's Claim of Breach**

Mubarak last argues that Webber is not immune under Section 97.002 because it breached its contract with TxDOT. He argues that Item 422 requires Webber "in paragraph 4.8.2 to '[o]verlap plastic sheeting and weight down sufficiently so air cannot get under the plastic,' and 4.8.3 instructs Webber to '[o]verlap the mats and weight down sufficiently so air cannot get under the mats.'" Because rebar flew off the Chew Road overpass and struck his truck, Mubarak argues Webber breached the TxDOT Contract "by not having sufficient weight to prevent air from getting under the plastic and mats and thereby causing the rebar to blow off."

Mubarak argued in his summary judgment response that Webber breached Item 422 because its provisions required that an enclosure be used to prevent air from entering, which Webber failed to implement because wind apparently lifted the mats, projecting the rebar. But Item 422 paragraph 4.8.1 contains a provision stating, "[c]over surfaces that cannot be cured by direct contact with mats, forming an enclosure well anchored to the forms or ground so outside air cannot enter the

22

enclosure." Mubarak provided no evidence that any relevant surface could not be cured by direct contact with the mats. Moreover, the provision required that an enclosure be anchored so that air could not enter, which would affect the concrete curing process; the provision does not require that edges of the mats be secured to prevent strong wind gusts from moving the mats. Thus, a contractor could comply with this provision by using anchoring that prevented air from entering but that did not prevent wind gusts from moving the mats. Accordingly, Mubarak did not create a fact issue on whether this provision was applicable or breached.

Mubarak also appears to conflate breach of a contract with potential tort liability arising from the way in which a contract is performed. Even if Webber had been negligent in selecting rebar or in the way in which it used the rebar to weigh down the mats and plastic—a matter we do not decide—that does not establish Webber failed to comply with the contract "documents material to the condition or defect that was the proximate case" of Mubarak's alleged personal injury or property damage. "Whether a contractor was in compliance [with contract documents] does not hinge on whether the plaintiff's allegation that the contractor owed the plaintiff a duty is true." *See Austin Materials, LLC v. Rosado*, No. 03-22-00201-CV, 2023 WL 3666107, at *3 (Tex. App.—Austin May 26, 2023, pet. denied) (mem. op.) (citing *ISI Contracting*, 647 S.W.3d at 502–03) (holding immunity defense applied because "contractors had complied with the contract

documents material to the *alleged* proximate cause of the personal injury and death") (emphasis in original); *see also Brown*, 500 S.W.3d at 515 (holding that evidence that additional safety precautions could have been taken is not evidence that contractors failed to comply with contract documents material to condition or defect that caused plaintiff's injuries).

We conclude that Webber conclusively established that at the time of the incident, it was in compliance with the contract documents material to the condition or defect that was the proximate cause of Mubarak's alleged injuries, and Mubarak failed to raise a genuine issue of material fact precluding summary judgment.[14]

We sustain Webber's sole issue.

## Conclusion

We reverse the trial court's order denying Webber's motion for summary judgment and render judgment dismissing Mubarak's claims against Webber.

---

[14] *Compare with Bennett Truck Transp., LLC v. Williams Bros. Const.*, 256 S.W.3d 730, 732–33 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding question of material fact as to applicability of Section 97.002 existed when contractor's manager testified that while he could not recall any missing traffic signs, he could not testify required signage was present "at the exact date and time" of accident); *Haydon Bldg. Corp. v. Green*, No. 08-23-00073-CV, 2024 WL 3611000, at *6 (Tex. App.—El Paso July 31, 2024, pet. filed) (mem. op.) (holding genuine issue of material fact as to applicability of Section 97.002 existed regarding whether traffic control barriers remained in compliance with traffic plan at time of construction worker's death).

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.